Good morning, your honors. May it please the court. My name is Aaron Dawson. I represent the plaintiff and appellant, Jill Steigleman. It's Aaron, right? Double A-R-O-N? That's correct, not to be confused with my co-counsel, Steve Dawson. We're here because the district court for the second time found that ERISA preempts Ms. Steigleman's state law claims and entered judgment against her. This court should once again reverse for three primary reasons. This will serve as a bit of a road map. First, the district court violating the rule of mandate and law of the case. Second, even if that were not true, the ERISA finding is contrary to the law. Both of these things are reviewed de novo. And third, regardless of the first two, the finding, the conclusion, was based on clearly erroneous findings of fact, which is an abuse of discretion standard. Now I want to be clear about what we are appealing. It is our position that in ruling on summary judgment on the question of ERISA preemption, that the district court had no choice but to rule in Steigleman's favor. And this is appealable because it was based on legal error, no factual disputes remain, no genuine factual disputes, and it wasn't followed by a full trial on all of the issues. But rather than directly challenging the court's finding that the district court's finding that factual disputes did remain, today I'll primarily be spending my time discussing the final order concluding that ERISA applies. First the district court conducted a bench trial? That's correct. And I was about to actually give a brief history, procedural history of what got us here. And your client consented to that? Well, it was the... Or didn't object? So the, did not object, yes, that's correct. The district court denied motions for summary judgment by both parties in order for the parties to go to a bench trial. Four years ago, when the district court first entered judgment against Ms. Steigelman, it was based on the conclusion that her long-term disability coverage was pursuant to a insurance benefit plan that she had established or maintained, and thereby was governed by ERISA. This was based on primarily undisputed facts that the disability coverage offered under this plan, among other types of coverage, were, that Steigelman was eligible for that because of her membership in a non-profit organization called the Agents Association, or TAA. And that her staff, like all TAA member staff, had access to this insurance coverage as well by virtue of their employment with the TAA member. For those who enrolled, for those employees of hers who enrolled, Ms. Steigelman paid the premiums. This, based on this, the district court found she'd created an ERISA plan. On appeal, this court held that though Steigelman's payment of premiums certainly was evidence of the creation of an ERISA plan, it was insufficient, and remanded the case to resolve a single issue of material fact, which was whether Ms. Steigelman had created eligibility criteria and placed those on the offer to pay her employees premiums. On remand, the district court resolved that lone factual dispute in Steigelman's favor, and this should have ended the matter. Instead, the district court analyzed the ERISA issue from square one, including any issue, argument, fact available. And this was convenient for Symetra because it knew that that lone factual dispute was no longer viable. It was based on a single piece of evidence, Ms. Steigelman's deposition testimony, that this court deemed was insufficient for Symetra to meet its burden. And though given the opportunity, it didn't seek additional evidence, and therefore had no additional evidence. And so it pivoted to other arguments without new facts. For example, though it was always known that the TAA plan offered certain kinds of coverage in what it offered, and that some of those coverages were also available to employees' family members, and it was always known what Steigelman's staff enrolled in and what they didn't enroll in, and that they enrolled for themselves, Symetra on remand began arguing that these facts were evidence that their choices were governed by limitations Steigelman had placed on her payment of premiums. So the district court again found ERISA preemption, supplementing its original basis with primarily two factual findings. That Steigelman indeed placed limitations on her payment of premiums, that is, on the types of coverage she would pay for, and that she would only pay for employees, not their family, not non-employees. And that she had an ongoing administrative scheme in place to make sure that these limitations were followed. The district court also found that Steigelman had delegated the establishment or maintenance of an ERISA plan to a third party. So with that, I'd like to turn to the rule of mandate discussion. On remand, a lower court's conduct must be consistent with the expressed terms and the spirit of the appellate court's decision. The party can't use the accident of remand as an opportunity to reopen prior arguments or arguments that should have been asserted before appeal. Here, this court found that the district court had erred in finding Steigelman's payment of premiums was sufficient to establish an ERISA plan, and identified one issue of material fact and no others, as both sides agreed on remand. And in the footnote, it also identified one legal issue that it had not addressed, but the district court, quote, may decide whether it would be appropriate to consider on remand. And that was whether TAA itself established the plan as an employer under 29 U.S.C. 10025. That issue is no longer relevant today. Did the prior panel either explicitly or impliedly say there was no employee welfare benefit plan? No, Your Honor. The prior panel said that the facts don't support that one was created. I have the prior panel decision in front of me. I was just re-reviewing it. The prior panel said that the evidence didn't support that conclusion as a matter of law. Yes. And so the district court erred in entering summary judgment, but then did not go on to make any factual findings, reach any conclusions, but reversed and remanded. So the summary judgment order was in error, but I don't see that this disposition limited the issues on remand in the way you're suggesting. Well, respectfully, Your Honor, I would disagree only to a limited extent in the sense that I think if you read the mandate, you'll see that what the prior panel, the prior panel did make certain factual findings. For example, the facts were that Steigelman had access to this benefit plan by virtue of her membership and that her staff gained access to that coverage as well by virtue of her membership, and she paid the premiums, which is unlike what the district court continued to argue on remand, which was that these facts showed Steigelman purchased or obtained the coverage for her employees. That is contrary to the facts as described. Were those facts described in our prior decision, were those agreed upon by the parties, were those facts that were indisputable? Yes, that's correct. And yet the district court says they were evidence of purchasing a plan or obtaining sorry, purchasing coverage for her staff or obtaining coverage for her staff, which may just be semantics, but I think it's important in the context of how we analyze. So none of those facts were reexamined by the district court at the I'm asking about whether or not, indeed, the Steigelman or staff had access to this coverage. I'm asking about the conclusions that we reached as to whether any of those ‑‑ whether all of those facts were conceded by both sides. Well, I hope I'm answering your question. Those facts were conceded by both sides, and I don't think that was ever really disputed. There was an argument about whether the label of purchasing or obtaining coverage could be applied, but the underlying facts were never in dispute. The issue is whether Steigelman established or maintained an ERISA plan. Correct. So you're parsing pretty finely the semantics here of purchased or acquired or whatever that means when the undisputed facts are that this insurance was available through her membership in this organization, TAA, and she agreed to pay certain portions of the premiums. Perhaps you're correct. Perhaps it does not matter. You can call it ‑‑ one can call it whatever they want, purchasing, obtaining. So what is it that you think the district court was supposed to do on remand? What is it that had already been decided that the district court violated in the mandate? Well, I think there were a few different things. So the district court ‑‑ I'll try to answer that by jumping to some specific examples. Whereas this Court held that payment of premiums is insufficient. It's evidence, but it's not in itself sufficient. Exactly. That couldn't support a finding of ERISA preemption. The district court directly disagreed with that legal conclusion. It challenged it repeatedly, including by pointing to the same two cases that this Court used in support of its conclusion that would be con and cruel. The district court used that in support of its own contrary conclusion. So did the district court conclude after the bench trial that Ms. Stagelman had established and maintained an ERISA plan because she paid premiums? That was a major part of the ruling. But that wasn't all of the ruling. No, it was not, Your Honor. But the remainder of the ruling, as I intend to explain, was based on facts that were completely derivative of her payment of premiums. For example, she paid premiums for A, B, and C, but she wouldn't pay premiums for something else. She paid premiums for these people, but not those people. She paid premiums for something that she had assessed or evaluated the quality of before she paid those premiums. Her payment of premiums was also included the desire to offer employee benefits. And because these were employee benefits, that was a major part of the district court's reasoning. Her offering to pay employee premiums was a benefit package because she was therefore offering disability and vision and dental insurance and disability insurance. But all of this is really just iterations of the point or slight extrapolations upon the point that she paid premiums. But she also selected a different health care provider or health insurance provider, correct? That's true, Your Honor, which happened sometime years after she enrolled in coverage and most of her staff had enrolled in coverage. It was a completely unrelated policy with nothing to do with the TAA plan. And the district court, the main point for the district court was that this showed Steigelman had evaluated the TAA plan coverage and rejected the TAA plan medical coverage for something else. But the fact of the matter is the TAA plan didn't have any medical coverage. It had things like telehealth or accidents, critical illness, things like that. But those aren't health insurance. Also on this point about this unrelated policy, this was something, like many of Symetra's arguments, that really wasn't raised until extremely late in the proceedings. It was hardly ever briefed. We have no information about the facts and circumstances leading up to her purchase of the insurance, the medical insurance. It just was never really part of this case. But regardless, putting that aside, and even if one were to assume that medical insurance itself was governed by ERISA, that does not dictate that this unrelated benefit plan that they all had is also governed by ERISA. This one-day bench trial, which you've told us, I think, that your client agreed to. Yes. Again, I just — There's no — you didn't make a jury trial demand? We made a jury trial demand for the state law claims, but not anything else. So you know it's going to be a bench trial, and it lasted, what, one day? The bench trial lasted one day, and, Your Honor, when you say you know it's going to be a bench trial, I'm not sure if you're saying that we knew there would be a bench trial on remand, because I would disagree with that. No, no, no. No. At the point that Judge Silver scheduled the bench trial. We knew there would be one. You knew there would be a bench trial. Yes. Your client consented to it. Were there any limitations placed by Judge Silver on what you could present? No, Your Honor. In fact, Judge Silver had explicitly said that everything under the sun was going to be considered in this bench trial. But I would point out that the district court excluded the majority of our exhibits because they were — they proved a point that was not disputed, and that is Steigelman had no involvement in the administration of this plan. Everything was done by this third-party entrepreneurial business, MGC. The district court had trouble identifying the relevance of these things, because it would only look at Steigelman's actions, and as it explicitly said, it was of the opinion that payment of premiums was sufficient. I have 45 seconds left, which I would love to reserve for rebuttal. Thank you, Your Honor. We'll give you — I'll give you a couple minutes. I very much appreciate that. Thank you, Your Honor. Good morning. May it please the Court, I'm Steve Bressler, and along with Nicole True, we represent the Apple East Metro Life Insurance Company. You're soft-spoken, and I'm sure everyone around you appreciates that. Bring the microphones a little closer to you and speak up like you were addressing a classroom of teenagers. Is this better? A little louder. Okay. The district court, sitting as the trier of fact, found that a palant had established and maintained an employee benefit plan when she provided health, disability, vision, and dental insurance benefits to her employees on an ongoing basis for nine years. This Court reviews those district court's findings for clear error, and there is none. A palant was not a passive bystander in the establishment and maintenance of an employee benefit plan, and I would point out that the statute only requires either that she establish or maintain, but not both. But she wasn't a passive bystander in the establishment or maintenance of an employee benefit plan, and there are seven indicia that a palant arranged for the program. First, a palant decided to offer benefits, a practice she did not have to do. She testified at trial that some agencies do not offer benefits. She likened herself to other employers that maintain benefit plans, and she said that she offered these benefits to attract and keep qualified personnel. Second, a palant decided where to get those benefits. For disability, dental, and vision insurance, it was through her membership in TAA. But for health insurance, it was with Blue Cross Blue Shield of Arizona. As a licensed insurance agent with relationships with carriers, she could have obtained coverage outside of the TAA offerings. But she evaluated and liked the TAA offerings, with the exception of the medical insurance. And as she didn't like the health insurance offerings, she went with Blue Cross and Blue Shield of Arizona. She paid 100% of the premium for the TAA offerings and 50% of the premiums with Blue Cross Blue Shield. Third, a palant decided who would get these benefits. A palant admitted at trial that she put limits on what she would cover. Though the TAA offerings were available for employees and their families, she would only pay for the employees, not their families. And once again, she likened it to what other employers typically did. And her employees testified, Michelle Morin testified, that she viewed this as a benefit of employment. Fourth, a palant decided what benefits to offer and what benefits not to offer. The district court found that she had only decided to offer health, disability, dental, and vision insurance. The record reflected during the nine years that she offered benefits to her employees, it was only for disability, dental, and vision insurance. It did not include the many other TAA offerings that were available if she said, apply for whatever you want, I'll pay for it. The other offerings included critical illness and cancer insurance, accident insurance, life insurance, long-term care insurance, and telemedicine, just to name a few. Consequently, the district court found as a matter of fact that a palant imposed her own limits on the TAA offerings to disability, dental, and vision insurance. Fifth, a palant acknowledged that one of the reasons she went with TAA's offerings is that they would handle much of the administration for her. In doing so, she agreed at trial that she was delegating tasks to TAA and its broker, MGC. This is also how the ERISA statute works. Under 29 USC section 1002 paragraph 5, the term employer means any person acting directly as an employer or indirectly in the interest of an employer in relation to an employee benefit plan, and includes a group or association of employers acting for an employer in such a capacity. And just as in the Conn case, which we've cited in the brief, where ABC's activities were attributable to Harlow Carpets, TAA's and MGC's activities can be attributed to a palant's agency. Sixth, a palant decided how to pay for the benefits. She could have had her agency billed directly and paid that way, but she instead opted to have it deducted from her commission checks. And finally, seventh, recognizing that she had created an employee benefit program, she listed it on her agency's tax returns under employee benefit programs and deducted the premiums. This fact was not in the record before the Ninth Circuit panel a couple of years ago, or it was not before the district court either. These tax returns were added to the record upon remand. So, before the bench trial even began, the district court asked the palant to identify opinions, preferably in the Ninth Circuit, where the employer directly paid the entirety of the insurance premiums, but did not establish an ERISA plan. And the palant could not come up with such cases, and we are not aware of any either. Let me finally just make a brief comment about the mandate that the district court supposedly didn't follow the court's mandate. When this panel previously heard, or when the Ninth Circuit panel previously heard the case, it was on a very narrow issue. And that issue was, did the district court err when it granted summary judgment? In other words, should it have ruled as a matter of law, based on the record before it, that the palant created an employee welfare benefit plan? And as to that issue, the court said no and reversed and remanded. There were no limits on the court's factual inquiry. In fact, in footnote two of that opinion, the court gave the district court leeway to consider an argument that it did not believe it had been made before the court. So, as we cited in our brief, the Barnes v. Chase Home Finance case, 934F3901, and I'm quoting now, a defendant need not raise every possible argument in a motion for summary judgment, but may make a different argument on remand if a grant of summary judgment in its favor is reversed on appeal, end quote. Another way to view this would be, suppose when we made our motion for summary judgment to the district court judge, the judge denied it and said we're going to have a trial, a fact issue. Would we be precluded from putting on evidence at trial that we had not put in our motion for summary judgment? And the answer is no, because we do not put all of our facts or all of our arguments in a motion for summary judgment. It's usually very limited. And so when this court remanded, it was then for the district court to hold a fact issue, a bench trial, and considering all the relevant facts. Unless the court has any questions for me, I don't have any further comments. I have a question for you. So opposing counsel argued that the additional information or evidence that the district court relied upon was really just a derivative of payment of the premiums. And you've listed seven factors that you argue support the conclusion that Ms. Stickleman established or maintained an ERISA plan. How do you respond to their argument that all of those things are really just another way of saying she paid for the premiums? Well, it was really more than paying for premiums, unless you're going to say that everything about establishing and maintaining a plan goes to the payment of premiums. But she decided where she would get those benefits. That's not payment of premiums. She had a choice. Should I get them from TAA? Should I get them from another disability carrier? Because she wrote disability insurance and got them from at least two other carriers. She decided who would get the benefits. She could have extended them to the families, but she didn't do that. She decided what benefits to offer. And she could have offered many other benefits that she didn't offer. And she also made the decision who would administer a lot of these activities. She was attracted to TAA because they said we can do a lot of the work for you, which is very typical, by the way, in large employers. Our law firm, for example, relies upon the carriers to do a bit of the administration in terms of benefits. So most of these actually don't go to the payment of premiums. And obviously, somebody has to pay the premiums if you're going to get the coverage. And that's a core foundation. But that's true with every benefit plan. Does the panel have any more questions for me? So thank you. Thank you. Thank you, Honors. I'd first like to go back for a moment to a question by Judge Hawkins. On remand, the district court gave the parties the option. It asked whether it could be resolved by motion on summary judgment, or would they like a bench trial? And repeatedly, the parties both said it could be resolved on motion practice. But ultimately, the court decided no bench trial. It seems to me that opposing counsel Symetra's argument kind of proves the point I am trying to make. All of those arguments really are things that were argued in the first appeal. It was a complete repeat of that appeal. Ms. Stiglitz's tax returns and the fact that she got benefits from TAA and not somebody else, all of these things have already been argued. There was one fact that was identified by the Ninth Circuit on remand. And I'd quickly like to address the point that in a footnote, as both parties mentioned, there was another argument that the court said the district court could address on remand. That really is not in play anymore. That had to do with an alternative argument that not Stiglitz, but TAA itself was the one who established a benefit plan. And it could do so as an employer as opposed to as an employee organization, which this court ruled it is not. All of these facts that opposing counsel just offered to the court, that she decided to offer benefits, decide where to get the benefits, the limitations on these benefits, none of these have anything to do with whether or not there was sufficient administrative involvement in the operation of a plan. The Ninth Circuit found that Ms. Stiglitz did not contract for, nor did she otherwise arrange for this coverage, which would suggest it found she did not delegate this coverage. But those findings are important because practically all cases dealing with the question of whether an employer has established an ERISA plan, they fall into one of two categories. If I may finish my point. One, where the employer contracts for and arranges for this coverage directly. Or two, multi-employer welfare arrangements, or METs, where an entity is established by employers specifically for the purpose of obtaining benefits and then individual employers subscribe to that unique entity to get benefits for their employees. This case fits neither of those facts at all, and ruling otherwise would be a dramatic expansion of ERISA. Thank you, Your Honors. Thank you. Counsel, thank you both for your arguments this morning. This case is submitted.
judges: HAWKINS, BYBEE, BADE